595 So.2d 815 (1992)
STATE of Louisiana, DEPARTMENT OF SOCIAL SERVICES, et al., Plaintiff-Appellant,
v.
Ralph PARKER, Defendant-Appellee.
No. 23358-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
*816 Ramona L. Emanuel, Shreveport, for plaintiff-appellant.
Francis M. Gowen, Jr., Shreveport, for defendant-appellee.
Before NORRIS, BROWN and STEWART, JJ.
BROWN, Judge.
In November 1990, the State of Louisiana, Department of Social Services (DSS), filed this petition to establish paternity in the First Judicial District Court pursuant to LSA-R.S. 46:236.1(F), et seq. and LSA-R.S. 9:396 et seq. Believing that the Caddo Parish Juvenile Court had exclusive jurisdiction, the alleged biological father filed a declinatory exception of lack of subject matter jurisdiction. The district court sustained the declinatory exception, dismissed the lawsuit without prejudice, and DSS appealed. Determining that the district court had jurisdiction, we reverse.

EXCLUSIVITY OF SUBJECT MATTER JURISDICTION
The Louisiana Constitution of 1974 retained the district, family, juvenile, parish, city, and magistrate courts existing on the effective date of the constitution. LSA-La. Const.1974, Art. 5, § 15(A). Included in the retained juvenile courts was the Juvenile Court for Caddo Parish. The constitution authorized the legislature to divest district courts of juvenile jurisdiction and vest that jurisdiction exclusively in specialized family or juvenile courts. LSA-La. Const.1974 Art. 5, §§ 16(A) and 18; See Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La. L.Rev. 765 (1977) at 811-812.
Pursuant to this constitutional authorization, the legislature gave juvenile courts exclusive original jurisdiction over adults in certain cases involving the establishment or enforcement of support. Prior to the January 1, 1992, effective date of the Louisiana Children's Code, this exclusive jurisdiction *817 over adults was granted through the provisions of LSA-C.J.P. Art. 16(A). Currently that jurisdiction is granted by Article 311 of the Louisiana Children's Code. The provisions for purposes of the instant case grant juvenile courts exclusive original jurisdiction over:
Proceedings brought by the Department of Social Services on its own behalf or on behalf of any person for whom support has been ordered to enforce support by interstate income assignment pursuant to R.S. 46:236.4, or proceedings brought by the district attorney to establish or enforce support pursuant to the provisions of R.S. 46:236.2 or R.S. 46:236.1(F).
LSA-Ch.C. Art. 311(A)(3) [formerly LSA-C.J.P. Art. 16(A)(6) ].
DSS argues that the above-quoted provisions should be strictly construed to mean that juvenile courts have exclusive jurisdiction over proceedings to establish paternity brought pursuant to R.S. 46:236.1(F) only when such proceedings are brought by the district attorney. Thus, DSS argues that because it brought the instant proceedings through its staff attorney, rather than the district attorney, the action properly was filed in the First Judicial District Court. A contrary ruling, it argues, would jeopardize over "100 judgments obtained in just the last six months alone".
The district court found that to adopt the argument of DSS would render useless the above-quoted jurisdictional provisions concerning proceedings brought under R.S. 46:236.1(F). The court observed that R.S. 46:236.1(F) only creates a cause of action to establish paternity in favor of DSSnot the district attorney. The court concluded that actions pursuant to R.S. 46:236.1(F) are initiated by the State of Louisiana, and that it would be absurd for the legislature to intend for exclusive subject matter jurisdiction to be predicated on whether the district attorney or DSS brought an action under R.S. 46:236.1(F).

DETERMINING THE LEGISLATIVE INTENT
The paramount consideration in a case involving statutory interpretation is determining the legislative intent. Turner v. City of Shreveport, 437 So.2d 961 (La. App.2d Cir.1983). Courts should construe statutes to give them the meaning intended by the legislature and to avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La.App.2d Cir.1984).
Statutes should be given a genuine construction in accordance with the fair import of words taken in their usual sense in connection with context. State v. Hudnall, 480 So.2d 933 (La.App.2d Cir.1985). Nevertheless, when a statute contains latent ambiguities despite superficial clarity, an appellate court may turn to the statute's legislative history for guidance. West v. Kerr-McGee Corporation, 765 F.2d 526 (5th Cir.1985). Moreover, judicial construction must aim to attribute reasonable meaning to an entire statutory framework and context. Johnston v. Morehouse Parish Police Jury, 424 So.2d 1053 (La.App.2d Cir.1982).
Initially, we observe that the fair import of the wording of LSA-Ch.C. Art. 311(A)(3) draws a distinction between proceedings brought by DSS pursuant to R.S. 46:236.4, and proceedings brought by the district attorney pursuant to R.S. 46:236.2 and R.S. 46:236.1(F). If the legislature believed that the district attorney would be representing DSS in juvenile court in all matters concerning aid to families with dependent children, then it arguably would have consistently referred solely to DSS or the district attorney throughout article 311(A)(3). The distinction drawn between the two appears deliberate, and strongly supports the argument of DSS.
Because the provisions of article 311(A)(3) refer to the provisions of R.S. 46:236.1(F), proper construction necessarily requires review of the provisions of R.S. 46:236.1(F). As applicable herein those provisions state:
(1) The department, except when it is not in the best interest of the child, may... take direct civil action, including actions to establish filiation against an alleged biological parent ... solely for the purpose of fulfilling its responsibility *818 under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which the department is providing services under this Section.... A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
(2) All proceedings brought to establish filiation against an alleged biological parent pursuant to R.S. 9:396(B) shall not be open to inspection except on written authorization by the court, and there shall be no publication thereof....
(3) If the district attorney neglects or refuses to file a proceeding to establish filiation against an alleged biological parent, the department may file the ex parte motion.
(4) The district attorney, department, and their respective staff acting pursuant to this Section and R.S. 9:396(B) shall be immune from civil liability that otherwise might be incurred or imposed....
Also pertinent are the provisions of LSA-R.S. 46:236.1(K)(3) and LSA-R.S. 9:396(B). The former provisions state in part:
Any attorney initiating legal proceedings pursuant to this Section and Titles IV-D and IV-A of the Social Security Act shall represent the state of Louisiana, Department of Social Services exclusively.... The provisions of this Paragraph shall apply to a staff attorney in support enforcement services, district attorney, or contract attorney providing services pursuant to Title IV-D.
The latter provisions state in part:
The district attorney, in assisting the Department of Social Services in establishing paternity as authorized by R.S. 46:236.1, may file a motion with the court of proper jurisdiction and venue prior to and without the necessity of filing any other legal proceeding....
A review of the statutory provisions set out above shows that: (1) the law [R.S. 46:236.1(F)] gives DSS, and not the district attorney, a separate and distinct civil cause of action to obtain an order, judgment, or agreement with respect to child support; and (2) the district attorney, when bringing an action under R.S. 46:236.1(F), represents the State of Louisiana, Department of Social Services.
The explanation for DSS's predominant statutory role is found in the provisions of federal law, and the reciprocal provisions of state law concerning assistance to needy families with children. The provisions of 42 U.S.C.A. § 602(a)(3) state that a state plan for aid and services to needy families with children must either provide for the establishment or designation of a single state agency to administer the plan, or provide for the establishment or designation of a single state agency to supervise the administration of the plan. Similarly, the provisions of 42 U.S.C.A. § 654(3) require a state plan for child and spousal support to provide for the establishment or designation of a single and separate organizational unit, which meets such staffing and organizational requirements as the Secretary of the Department of Health and Human Services may by regulation prescribe, within the state to administer the plan.
In Louisiana, the agency of the state designated by law to cooperate with the United States and administer the federal law in these matters is DSS (formerly the Department of Health and Human Resources). LSA-R.S. 46:236.
Because DSS is given the cause of action under R.S. 46:236.1(F) to establish and enforce support, the exclusive jurisdiction provisions of Art. 311(A)(3) mean that when the district attorney represents DSS in such a proceeding, the exclusive original jurisdiction is in juvenile court. Furthermore, the distinction drawn in that article between actions brought by DSS and actions brought by the district attorney strongly implies that when the district attorney does not represent DSS in such actions, the district courts have jurisdiction. *819 In questioning the soundness of this implication, we must come to grips with the correct observation of the district court that such a reading of the statute makes subject matter jurisdiction turn on whether the district attorney or DSS is bringing a civil action under the provisions of R.S. 46:236.1(F).
The provisions of LSA-C.C.P. Art. 2 state:
Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. (Emphasis added.)
The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties, and a judgment rendered by a court which has no jurisdiction over the subject matter is void. LSA-C.C.P. Art. 3.
The provisions of Children's Code Article 311(A)(3) run counter to the provisions of Code of Civil Procedure Article 2 because the authority of a juvenile court to hear and determine an action brought pursuant to the provisions of R.S. 46:236.1(F) is based upon the identity of the attorney representing DSS, rather than upon the object of the demand, the amount in dispute, or the value of the right asserted. This anomalous result provides a strong argument against DSS's position in this case. Nevertheless, there is one further indication of legislative intent which we hold ultimately tilts the scales in favor of DSS's position.
Prior to its amendment by Act 686 of 1988, LSA-C.J.P. Art. 16(A)(6), now LSA-Ch.C. Art. 311(A)(3), provided that a court exercising juvenile jurisdiction had exclusive original jurisdiction in:
Proceedings brought by the Department of Health and Human Resources on its own behalf or on behalf of any person for whom support has been ordered to enforce support by interstate income assignment pursuant to R.S. 46:236.4.
House Bill 1062 of 1988 originally proposed to retain all of article 16(A)(6) as it then existed, and to add that the juvenile court's jurisdiction would also include DSS proceedings to enforce support by income assignment or the institution of an action for support directly against the person responsible for support. If that bill had passed the legislature unamended, a court exercising juvenile jurisdiction would have been given exclusive original jurisdiction over DSS actions under R.S. 46:236.1(F) by the following proposed language:
Proceedings brought by the Department of Social Services on its own behalf or on behalf of any person for whom support has been ordered to enforce support pursuant to R.S. 46:236.2 or 236.4, or to bring a direct civil action pursuant to R.S. 46:236.1(F).
The proposed language would have been consistent throughout, and would have created no ambiguity. A house floor amendment, however, changed the language by restoring the restriction that actions by DSS must be to enforce support by interstate income assignment, and by adding exclusive jurisdiction in juvenile court for actions by the district attorney to establish or enforce support pursuant to the provisions of R.S. 46:236.2 or R.S. 46:236.1(F).
More than any other manifestation of legislative intent, the floor amendment supports the position that the legislature intended to grant additional exclusive jurisdiction to juvenile courts only when the actions at issue are brought by the district attorney. It is not clear why the legislature would want to restrict DSS's access to juvenile courts to instances in which the district attorney assists DSS in bringing such actions. Nevertheless, it is for the legislature, not this court, to assess the wisdom of the jurisdictional grant and the jurisdictional anomaly thereby created.

CONCLUSION
For the reasons set forth above, we find that the legislature drew a jurisdictional distinction between actions brought by the district attorney and actions brought by DSS pursuant to the provisions of R.S. *820 46:236.1(F). In the former, exclusive jurisdiction lies in juvenile court; in the latter, exclusive jurisdiction lies in district court. Accordingly, the judgment of the trial court is reversed and the matter remanded. Costs of appeal are assessed to appellee.
REVERSED AND REMANDED.